UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------------X

THE ANNUITY, WELFARE and APPRENTICESHIP SKILL IMPROVEMENT & SAFETY FUNDS of the INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 15, 15A, 15C and 15D, AFL-CIO, by its TRUSTEES JAMES T. CALLAHAN, ROBERT SHAW, RUSSELL SHAW and CHRISTOPHER WARD, and JOHN and JANE DOE, as Beneficiaries of the ANNUITY, WELFARE and APPRENTICESHIP SKILL IMPROVEMENT & SAFETY FUNDS of the INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 15, 15A, 15C and 15D, AFL-CIO,

Plaintiffs,

-against-

COFIRE PAVING CORP.,

Defendant.

---------------------------------------------------------------------------X

**AFFIDAVIT IN SUPPORT OF <u>DEFAULT JUDGMENT</u>**

08-CIV-3988 (RWS)

JAMES M. STEINBERG, being duly sworn, deposes and says:

1. I am a member of the law firm of BRADY McGUIRE & STEINBERG, P.C., attorneys for the Plaintiffs in the above-entitled action and am fully familiar with all the facts and circumstances of this action.

2. I make this affidavit pursuant to Rules 55.1 and 55.2(a) of the Civil Rules for the Southern District of New York in support of the Plaintiffs' application for the entry of a default judgment against Defendant COFIRE PAVING CORP.

3. This is an action arising under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 <u>et seq.</u> ("ERISA") to compel the Defendant's acquiescence to a payroll audit for the period of July 1, 2004 through July 31, 2007 for the purpose of determining whether all fringe benefit contributions have been paid to the Plaintiffs and to recover any delinquent fringe benefit contributions owed as calculated in the report to be issued after the audit is completed to the ANNUITY, WELFARE and APPRENTICESHIP SKILL

IMPROVEMENT & SAFETY FUNDS of the INTERNATIONAL UNION OF OPERATING

ENGINEERS, LOCAL 15, 15A, 15C and 15D, AFL-CIO (the "LOCAL 15 FRINGE BENEFIT

FUNDS").

4.    The subject matter jurisdiction of this Court is invoked pursuant to Sections 502

and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145.

5.    This action was commenced on April 29, 2008 by the filing of the Summons and

Complaint.  A copy of the Summons and Complaint was personally served on the Defendant

COFIRE PAVING CORP. on May 29, 2008, by a Process Server who personally served Carol

Vogt, an Authorized Agent in the Office of the Secretary of State of the State of New York.

Proof of said service was filed with the court on June 6, 2008 via the ECF System.  (A copy of

the Summons and Complaint, along with the Proof of Service are annexed hereto as Exhibit

"A".)

6.    As a signatory to a collective bargaining agreement with LOCAL 15 as a result of

its membership in the General Contractors Association of New York, Inc. (a copy of which is

annexed hereto as Exhibit "B"), Defendant COFIRE PAVING CORP. agreed to be bound to all

agreements and declarations of trust, amendments and regulations, thereto, and to remit all

contributions in accordance with the procedures established by the LOCAL 15 FRINGE

BENEFIT FUNDS.  (A sample copy of a Local 15 Trust Agreement is annexed hereto as Exhibit

"C").

7.    As a signatory to a collective bargaining agreement with LOCAL 15, Defendant

COFIRE PAVING CORP. is required to make contributions to the Plaintiff Trust Funds on

behalf of all LOCAL 15 members in its employee.  For the period of July 1, 2004 through July

31, 2007, the Plaintiffs have been unable to independently verify whether the LOCAL 15

members in the Defendant's employ received the proper fringe benefit contributions.  As such,

the only basis for determining whether the correct fringe benefit contribution payments were made by the Defendant for the period in question is to perform an audit of the corporate records of Defendant COFIRE PAVING CORP.

8. In accordance with the applicable Trust Agreements and the Collection & Audit Procedures established by the Board of Trustees (a copy of which are annexed hereto as Exhibit "D"), the LOCAL 15 FRINGE BENEFIT FUNDS were and continue to be authorized to have their representative examine the books and records of the Defendant to determine whether the said Defendant has made the proper contributions to said Plaintiff Trust Funds. (See Exhibit "D at Sections I and IV; along with Exhibit "C" at Annuity Trust Fund Agreement, Article V, Section 5.) As such, Defendant COFIRE PAVING CORP. is required to cooperate in the performance of said audit on a date to be set by this Court and to make the following documents available for review by the Plaintiffs' auditor for the period of July 1, 2004 through July 31, 2007:

a. Tax Forms 941s;
b. Quarterly Payroll Tax Forms a/k/a NYS-45 Tax Forms;
c. Corporate Payroll Records (including information identifying hours paid and gross wages); and
d. Cash Disbursements Records.
e. Tax Forms W-2s;
f. Payroll Reports (provided to the union or fund office, if applicable); and
g. Canceled Checks.

9. In the event that said audit is conducted and a fringe benefit deficiency is calculated, Defendant COFIRE PAVING CORP. should be required to pay the following damages within thirty (30) days of receipt of written notice of said deficiency:

a. The amount of the calculated deficiency pursuant to Section 502(g)(2)(A) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. Section 1001 *et seq*. ("ERISA");

b. Interest calculated on the deficiency balance at the plan rate of 6.0% (one percent over the prime rate of 5.0%) in accordance with the rate of interest

called for in the underlying Collection & Audit Procedures pursuant to Section 502(g)(2)(B) of ERISA;

c.  Statutory damages calculated on the deficiency balance at the plan rate of 6.0% (one percent over the prime rate of 5.0%) in accordance with the rate of interest called for in the underlying Collection & Audit Procedures pursuant to Section 502(g)(2)(C)(i) of ERISA; and

d.  The cost of the audit pursuant to Section 502(g)(2)(E) of ERISA since the Trust Agreements and Collection & Audit Procedures are silent as to the reimbursement to the Funds for these expenses.

10.  In addition hereto, the following damages should be awarded against the Defendant and in favor of the Plaintiffs, regardless of whether the audit is actually ever conducted:

a.  Attorneys' fees in the amount of $1,638.75 which are detailed hereafter and authorized pursuant to Section 502(g)(2)(D) of ERISA; and

b.  The costs expended by the Plaintiffs to date in connection with this litigation in the amount of $505.00 which are also detailed in the accompanying Statement of Damages and authorized pursuant to Section 502(g)(2)(E) of ERISA.

11.  The disbursements sought to be taxed have been made in this action or will necessarily be made incurred herein.

12.  The sum of $1,638.75 represents my law firm's charges to the client, the LOCAL 15 FRINGE BENEFIT FUNDS, for legal services in connection with this litigation. My services are billed at $285.00 per hour.

13.  On daily time sheets we detail the specific services we perform on behalf of the client which includes: the date of an activity; the specific activity or activities engaged in; the initials identifying the person that performed the work; and the amount of time expended. This information is thereafter maintained by the law firm in its permanent records and transferred to monthly billing invoices sent to the client.  (Annexed hereto as Exhibit "E" is a synopsis of the legal services performed on behalf of this client).

14. I have reviewed Exhibit "E" and it accurately reflects the expenditure of my time in this case. In fact, the total number of hours expended by me on behalf of the Plaintiffs is recorded on Exhibit "E" for which compensation is sought as follows: James M. Steinberg ("JMS")—5.75 hours.

15. A lodestar amount, if calculated by multiplying the number of hours reasonably expended by the aforementioned hourly rate, would result in a fee as follows: James M. Steinberg, 5.75 hours *times* $285.00 = $1,638.75.

16. I hereby submit that the services for which we seek compensation were reasonable and necessary under the circumstances. I further submit that these attorneys' fees may be awarded by the Court in the sound exercise of its discretion in light of the following factors:

(a) The fact that attorneys' fees may be awarded pursuant to ERISA, 29 U.S.C. Section 1132(g)(2)(D);

(b) The Defendant's clear and inexcusable culpability in this matter;

(c) The amount to be paid in attorneys' fees is reasonable;

(d) The fact that it would be grossly inequitable to require the Plaintiffs to absorb the cost of Defendant's clear and intentional disregard of its contractual and legal responsibilities; and

(e) The fact that an award of attorneys' fees will underline the seriousness of offenses against ERISA Funds and prove a deterrent to delinquencies on the part of this and other employers in the future.

17. The relief sought herein has not previously been requested.

**WHEREFORE**, the Plaintiffs request the entry of Default and the entry of the annexed Judgment against Defendant COFIRE PAVING CORP.

JAMES M. STEINBERG (JS-3515)

Sworn to before me this
3rd day of July, 2008

Notary Public

DEANA GRABOWSKI
Notary Public, State of New York
No. 01GR6120849
Qualified in Westchester County
Commission Expires December 27, 2008

EXHIBIT "A"

# United States District Court

SOUTHERN DISTRICT OF NEW YORK

The Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of the International Union of Operating Engineers Local 15, 15A, 15C & 15D, AFL-CIO et al.

V.

Cofire Paving Corp.

**SUMMONS IN A CIVIL CASE**

CASE NUMBER:

08 CIV. 3988

JUDGE SWEET

TO: (Name and address of defendant)

Cofire Paving Corp.
120-30 28th Avenue
Flushing, New York 11354

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

BRADY McGUIRE & STEINBERG, P.C.
603 WARBURTON AVENUE
HASTINGS-ON-HUDSON, NEW YORK 10706

an answer to the complaint which is herewith served upon you, within Twenty (20) days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period of time after service.

J. Michael McMahon
CLERK CLERK

APR 29 2008
DATE

(BY) DEPUTY CLERK

# AFFIDAVIT OF SERVICE ON A CORPORATION BY THE SECRETARY OF STATE

Index # 08 CIV. 3988 Purchased/Filed: April 29, 2008

State of New York U. S. District Court Southern New York County

The Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds, etc., et al Plaintiff

against

Cofire Paving Corp. Defendant

STATE OF NEW YORK )
COUNTY OF FULTON ) SS
CITY OF GLOVERSVILLE )

Gerald Skinner , being duly sworn, deposes and says: deponent is over the age of twenty-one (21) years; that on May 29, 2008 , at 8:10AM , at the office of the Secretary of State of the State of New York in the City of Albany, New York, deponent served the annexed Summons in a Civil Case and Complaint , on Cofire Paving Corporation, S/H/A Cofire Paving Corp. , Defendant in this action, by delivering to and leaving with Carol Vogt AUTHORIZED AGENT in the Office of the Secretary of State of the State of New York, personally at the Office of the Secretary of State of the State of New York, two (2) true copies thereof and that at the time of making such service, deponent paid said Secretary of State a fee of 40.00 dollars; that said service was made pursuant to Section 306 Business Corporation Law .

Deponent further says that deponent knew the person so served as aforesaid to be the agent in the Office of the Secretary of State of the State of New York, duly authorized to accept such service on behalf of said defendant.

Description of the person served: Approx. Age: 49 Approx. weight: 110 Approx. Ht.: 5'1"

Sex: Female Color of skin: White Color of hair: Brown Other:

Sworn to before me on this 29th day of May, 2008

Tammy Skinner
TAMMY SKINNER
NOTARY PUBLIC, State of New York
01SK6024054
May, 03 2011

Gerald Skinner
Gerald Skinner

Invoice•Work Order # 063335

**Service of Process:**

1:08-cv-03988-RWS The Annuity, Welfare and Apprenticeship Skill Improvemment & Safety Funds of the International Union of Operating Engineers, Local 15, 15A, 15C and 15D, AFL-CIO et al v. Cofire .Paving Corp.

ECF

**U.S. District Court**

**United States District Court for the Southern District of New York**

**Notice of Electronic Filing**

The following transaction was entered by Steinberg, James on 6/6/2008 at 1:15 PM EDT and filed on 6/6/2008

| | |
|---|---|
| **Case Name:** | The Annuity, Welfare and Apprenticeship Skill Improvemment & Safety Funds of the International Union of Operating Engineers, Local 15, 15A, 15C and 15D, AFL-CIO et al v. Cofire .Paving Corp. |
| **Case Number:** | 1:08-cv-3988 |
| **Filer:** | The Annuity, Welfare and Apprenticeship Skill Improvemment & Safety Funds of the International Union of Operating Engineers, Local 15, 15A, 15C and 15D, AFL-CIO |
| **Document Number:** | 3 |

**Docket Text:**

**AFFIDAVIT OF SERVICE. Cofire Paving Corp. served on 5/29/2008, answer due 6/18/2008. Service was accepted by Carol Vogt, an authorized agent in the office of the NYS Secretary of State. Document filed by The Annuity, Welfare and Apprenticeship Skill Improvemment & Safety Funds of the International Union of Operating Engineers, Local 15, 15A, 15C and 15D, AFL-CIO(by its trustee James T. Callahan). (Steinberg, James)**

**1:08-cv-3988 Notice has been electronically mailed to:**

James Michael Steinberg james.steinberg4@verizon.net

**1:08-cv-3988 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1008691343 [Date=6/6/2008] [FileNumber=4668299-0] [5fa9fa67af87a337a6887c8d2d44019d246cf96d7e947bd361d9b93f2f2745bf9027 3e8a7455fc2e36d4ddd1a11827bdd8cb62b38ea4064f4dd88cf463e351bc]]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X

THE ANNUITY, WELFARE and APPRENTICESHIP SKILL IMPROVEMENT & SAFETY FUNDS of the INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 15, 15A, 15C and 15D, AFL-CIO, by its TRUSTEES JAMES T. CALLAHAN, ROBERT SHAW, RUSSELL SHAW and CHRISTOPHER WARD, and JOHN and JANE DOE, as Beneficiaries of the ANNUITY, WELFARE and APPRENTICESHIP SKILL IMPROVEMENT & SAFETY FUNDS of the INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 15, 15A, 15C and 15D, AFL-CIO,

Plaintiffs,

-against-

COFIRE PAVING CORP.,

Defendant.

--------------------------------------------------------------------X

**COMPLAINT**

08-CIV-

JUDGE SWEET

08 CIV. 3988

Plaintiffs, by their attorneys, BRADY McGUIRE & STEINBERG, P.C., for their Complaint, respectfully allege:

1. This is an action arising under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 et seq. ("ERISA") to compel an audit of corporate records and to recover any delinquent contributions owed to employee fringe benefit trust funds.

**JURISDICTION**

2. The subject matter jurisdiction of this Court is invoked pursuant to Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145.

3. Venue is properly laid in the Southern District of New York pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), in that, as shown below, the INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 15, 15A, 15C and 15D, AFL-CIO ("LOCAL

15") maintains its principal office in the County of New York and the subject Funds are administered in the County of New York, State of New York.

**THE PARTIES**

4. The LOCAL 15 ANNUITY, WELFARE, APPRENTICESHIP SKILL IMPROVEMENT AND SAFETY FUNDS (hereinafter collectively referred to as the "LOCAL 15 TRUST FUNDS") are joint trustee funds established by various trust indentures pursuant to Section 302 of the LMRA, 29 U.S.C. § 186. The Trustees of the LOCAL 15 TRUST FUNDS maintain the subject plans at offices located at 265 West 14th Street, New York, New York 10011.

5. JAMES T. CALLAHAN, ROBERT SHAW, RUSSELL SHAW and CHRISTOPHER WARD are Trustees of the LOCAL 15 ANNUITY, WELFARE and APPRENTICESHIP SKILL IMPROVEMENT & SAFETY FUNDS and are "fiduciaries" within the meaning of Section 3(21) of ERISA, 29 U.S.C. § 1002(21).

6. The LOCAL 15 TRUST FUNDS also operate as the administrative representative of the Central Pension Fund of the International Union of Operating Engineers responsible for the collection of defined pension benefit contributions owed by entities maintaining collective bargaining agreements with LOCAL 15.

7. The LOCAL 15 ANNUITY FUND is an employee pension benefit plan within the meaning of Section 3(2) of the ERISA, as amended, 29 U.S.C. § 1002(2), established for the purpose of providing retirement income to employees.

8. The LOCAL 15 WELFARE and APPRENTICESHIP SKILL IMPROVEMENT & SAFETY FUNDS, are employee welfare benefit plans within the meaning of Section 3(1) of

ERISA, 29 U.S.C. § 1002(1), established for the purpose of providing medical, vacation and other benefits to the employees of contributing employers.

9. JOHN and JANE DOE are beneficiaries of the LOCAL 15 TRUST FUNDS within the meaning of Section 3(8) of ERISA, 29 U.S.C. § 1002(8).

10. The LOCAL 15 TRUST FUNDS constitute multi-employer/employee benefit plans within the meaning of Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §§ 1002(3) and (37).

11. Upon information and belief, Defendant, COFIRE PAVING CORP. ("COFIRE") was and still is a New York corporation, with its principal place of business located at 120-30 28th Avenue, Flushing, New York 11354.

12. Upon information and belief, COFIRE was and still is a foreign corporation duly licensed to do business in the State of New York.

13. Upon information and belief, COFIRE was and still is a foreign corporation doing business in the State of New York.

14. Upon information and belief, COFIRE is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5).

## AS AND FOR A FIRST CAUSE OF ACTION

15. Plaintiffs repeat and reallege each and every paragraph of the Complaint numbered 1 through 14 inclusive, with the same force and effect as though more fully set forth at length herein.

16. At all relevant times, COFIRE, as a member of the General Contractors Association of New York, Inc. (the "GCA") agreed to be bound by the terms and conditions of a collective bargaining agreement between LOCAL 15 and the GCA known as the Heavy Construction Agreement (hereinafter the "Collective Bargaining Agreement").

17. LOCAL 15 is a labor organization as defined in Section 2 of the LMRA, 29 U.S.C. § 152 et seq., having its principal office for the transaction of business at 265 West 14th Street, New York, New York 10011.

18. Under the terms of the Collective Bargaining Agreement, ERISA and the Trust Agreements for the LOCAL 15 TRUST FUNDS, an employer is required to make payments to the LOCAL 15 TRUST FUNDS based upon an agreed sum or percentage for each employee hour of its hourly payroll worked or wages paid, and to report such employee hours and wages to the LOCAL 15 TRUST FUNDS.

19. Pursuant to the terms of the Collective Bargaining Agreement, Plaintiffs are entitled to audit COFIRE'S books and records, which provide in pertinent part:

> The Employer is bound by all the terms and conditions of the Agreement and Declaration of Trust and Plan with respect to each of the Fringe Benefit Funds of both . . . and Local No. 15, 15A, 15C and 15D which Agreements and Declaration of Trust and Plan are hereby made part of this Agreement and shall be considered as incorporated herein.

20. Pursuant to the terms of the Trust Agreements establishing the LOCAL 15 TRUST FUNDS along with ERISA, Plaintiffs are entitled to audit COFIRE'S books and records.

21. In pertinent part, the Trust Indentures establishing the LOCAL 15 TRUST FUNDS state:

> Each Employer shall promptly furnish to the Trustees on demand any and all wage records relating to his Employees which the Trustees shall require in writing.
>
> The Trustees, or their authorized representatives, may examine the pertinent books and records of each Employer whenever such examination may be deemed necessary or advisable by the Trustees in connection with the proper administration of the [Funds].

22. Upon information and belief, Defendant COFIRE may have underreported the number of employees, the amount of employee hours and wages paid to its employees and the contributions due.

23. Although the Plaintiffs formally requested said audit from Defendant COFIRE on two previous occasions, to date, said Defendant has refused to schedule said audit and therefore Plaintiffs demand an audit of COFIRE'S books and records for the period of July 1, 2004 through July 31, 2007.

**AS AND FOR A SECOND CAUSE OF ACTION**

24. Plaintiffs repeat and reallege each and every paragraph of the Complaint numbered 1 through 23 inclusive, with the same force and effect as though more fully set forth at length herein.

25. Upon information and belief, COFIRE has failed to make the contractually required fringe benefit contributions to the LOCAL 15 TRUST FUNDS for the period of July 1, 2004 through July 31, 2007 in the approximate amount of $50,000.00 in violation of Section 515 of ERISA, 29 U.S.C. § 1145 which requires that employers pay fringe benefit contributions in accordance with the terms and conditions of the applicable collective bargaining agreement. The precise figure cannot be determined because the Defendant may not have filed accurate employment reports for those months in which it was required to make contributions as required by the Collective Bargaining Agreement and Section 209 of ERISA, 29 U.S.C. § 1059.

26. Despite repeated efforts by the LOCAL 15 TRUST FUNDS to collect the contributions owed, COFIRE remains delinquent in making the proper contributions and has failed to pay any portion of the outstanding contributions to the LOCAL 15 TRUST FUNDS as detailed above.

27.     Section 502 of ERISA, 29 U.S.C. § 1132 provides that upon a finding of an

employer's violation of Section 515 of ERISA, 29 U.S.C. § 1145, the Court shall award to the

Plaintiff Trust Funds: (a) the amount owed in unpaid fringe benefit contributions; together with

(b) interest on the unpaid contributions computed at the rate provided for under the Plaintiff

Trust Fund's Plan, or if none, at the rate set forth in the United States Internal Revenue Code at

26 U.S.C. § 6621; (c) statutory damages; (d) reasonable attorneys' fees; and (e) the costs and

disbursements of the action.

28.     Accordingly, as a direct and proximate result of COFIRE'S defaults, omissions

and breaches of the Collective Bargaining Agreement and Section 515 of ERISA, Defendant

COFIRE is liable to the Plaintiffs in the amount of no less than $50,000.00 along with potentially

additional contributions for the subsequent period not covered by the audit, together with

accumulated interest on the unpaid and/or untimely paid principal amount due and owing,

statutory damages, reasonable attorneys' fees, and the costs and disbursements incurred in this

action pursuant to Section 502 of ERISA, 29 U.S.C. § 1132.

**WHEREFORE**, Plaintiffs demand judgment on the First Cause of Action as follows:

1.     An order requiring Defendant COFIRE PAVING CORP. to submit all books and

records to Plaintiffs for audit at its cost in accordance with the underlying Trust Agreements, the

applicable Collective Bargaining Agreement and Section 502(g)(2)(E) of ERISA, 29 U.S.C. §

1132(g)(2)(E).

**WHEREFORE**, Plaintiffs demand judgment on the Second Cause of Action as follows:

1.     Of Defendant COFIRE PAVING CORP., in the amount of contributions

determined to be due and owing to the LOCAL 15 TRUST FUNDS of $50,000.00, plus any

additional monies that may be determined to become justly due and owing to the Plaintiffs during the pendency of this action and before final judgment, together with:

a. Prejudgment interest, computed at the plan rate or the applicable United States Treasury rate from the date on which the first payment was due on the total amount owed by Defendants, in accordance with Section 502(g)(2)(B) of ERISA, 29 U.S.C. § 1132(g)(2)(B);

b. Statutory damages in accordance with Section 502(g)(2)(C) of ERISA, 29 U.S.C. § 1132(g)(2)(C);

c. Attorneys' fees, costs and disbursements in accordance with Section 502(g)(2)(D) of ERISA, 29 U.S.C. § 1132(g)(2)(D); and

d. Such other and further relief as the Court may deem just and proper in accordance with Section 502(g)(2)(E) of ERISA, 29 U.S.C. § 1132(g)(2)(E).

Dated: Hastings-on-Hudson, New York
April 23, 2008

Yours, etc.

BRADY McGUIRE & STEINBERG, P.C.

By: James M. Steinberg (JS-3515)
Attorneys for Plaintiffs
603 Warburton Avenue
Hastings-on-Hudson, New York 10706
(914) 478-4293

**EXHIBIT "B"**

G.C.A.- HEAVY CONSTRUCTION,
EXCAVATION, DOCKBUILDING
AND FOUNDATION WORK,
BUILDING FOUNDATION WORK,
PAVING AND ROAD BUILDING WORK,
UTILITY WORK, TUNNEL WORK -
OPERATING ENGINEERS
LOCALS 14-14B & 15-15A

# AGREEMENT

between

MEMBERS OF THE
GENERAL CONTRACTORS
ASSOCIATION OF NEW YORK, INC.

and

THE INTERNATIONAL UNION OF
OPERATING ENGINEERS
LOCALS 14-14B & 15-15A



JULY 1, 2002 - JUNE 30, 2006

**AGREEMENT** made this 1ST day of July, 2002 by and between the Members of The General Contractors Association of New York, Inc. (hereinafter "G.C.A.") and other Employers who are signatories to this Agreement (hereinafter "Employer") and the International Union of Operating Engineers, Locals 14-14B, 15-15A AFL-CIO (hereinafter "Union").

NOW, THEREFORE, in consideration of the mutual promises and covenants hereinafter set forth, the parties agree as follows:

## ARTICLE I
## Purposes - Declaration of Principles

**Section 1 - Purposes**

The Purposes for which this Agreement is entered into are as follows:

(a) prevent strikes and lockouts;

(b) facilitate peaceful adjustment of grievances and disputes between the Employer, Employee and Union;

(c) prevent waste, unnecessary and avoidable delays, which result in unnecessary costs and expense to the Employer and Union, and the loss of wages to the Employee;

(d) enable the Employer to secure at all times sufficient forces of skilled workmen;

(e) provide as far as possible for the continuous employment of labor;

(f) provide that employment hereunder shall be in accordance with conditions and at wages herein agreed upon;

(g) bring about stable conditions in the Industry;

(h) keep costs of work in the Heavy Construction Industry as low as possible consistent with fair wages and proper working conditions, as provided for hereunder;

(i) continue the custom and practice heretofore prevailing for many years on heavy construction, excavation, building foundation work, dockbuilding and foundation work, paving and road building work, construction and maintenance work with local utilities, and tunnel work, (hereinafter "Heavy Construction Work") of agreement as to the terms and conditions of employment, and as to the necessary procedure for amicable adjustment of all disputes or questions that may arise.

**Section 2 - Declaration of Principles**

Both parties to this Agreement acknowledge that this Agreement is the uniform agreement for the Heavy Construction Industry and its execution will further the interests of said Industry. This Agreement will be interpreted under the following principles:

(a) that there shall be no limitations as to the amount of work an Employee shall perform during his working day, it being understood that said Employee shall perform a fair and honest day's work, within the limits of safety;

(b) that there shall be no restriction on the use of machinery, tools or appliances, within the limits of safety;

(c) that there shall be no restriction on the use of any raw or manufactured materials, except prison-made;

(d) that no person shall have the right to interfere with Employees or workmen during the working hours;

(e) that Employees are at liberty to work for whomsoever they see fit, and they are entitled to and shall receive the wages agreed upon as hereinafter set forth in this Agreement;

(f) that Employers are at liberty to employ and discharge whomsoever they see fit, and the Employer shall at all times be the sole judge as to the work to be performed and whether such work performed by an Employee is, or is not, satisfactory;

(g) that the G.C.A., Employer and the Union agree that they have not, and will not discriminate because of race, creed, color, nationality, sex, age, disability, marital status, sexual orientation or citizenship status against any individual;

(h) the Union shall provide, when requested, qualified and skilled men to each jobsite.

**Section 3 - Completeness of Agreement**

It is understood that the Purposes and Declaration of Principles herein set forth are a part of this Agreement

**Section 7 - Dues Checkoff - Local No. 14-14B**

Commencing July 1, 2002, and continuing through June 30, 2006 the Employer agrees that there has been deducted from the wage rates of each Employee covered by this Agreement working under any of the classifications set forth in Article IX, Section 6 (a) herein and territorial jurisdiction of Locals No. 14 and 14B, and pay to said Locals No. 14 and 14B, after proper execution by each Employee of an authorization form, the sum of ninety cents ($0.90) for each single time hour paid, and one dollar and eighty cents ($1.80) for each double time hour paid, which sums shall constitute a part of said Employee's Locals No. 14 and 14B union dues. Locals No. 14 and 14B agree to indemnify and to hold harmless the Employer from any and all claims, actions and/or proceedings arising out of said dues checkoff.

**Section 8 - Defense Fund Contribution - Local 14-14B**

Commencing July 1, 2002, and continuing through June 30, 2006 the Employer agrees to pay the sum of: five cents ($0.05) per hour for each single time hour paid; ten cents ($0.10) per hour for each double time hour paid; to each Employee covered by this Agreement working under the classifications and territorial jurisdiction of Local No. 14-14B. Such sum constitutes part of each Employee's Defense Assessment and shall be remitted to the Union. The Union agrees to indemnify and to hold harmless the

Employer from any and all claims and/or actions arising out of such deduction.

**Section 9 - Consolidated Stamp - Dual Check - Local No. 14-14B**

Payment to the Locals No. 14 and 14B Welfare Fund, Pension Fund, Annuity Voluntary Fund, Training Fund, Annuity Fund, Dues Checkoff and Defense Fund shall be by the purchase of a Consolidated Stamp. Payment to the Heavy Construction Industry Fund and Pension Contribution Liability Insurance shall be by separate check, submitted at the same time.

**B - Local No. 15-15A**

**Section 1 - Welfare Fund Contribution - Local No. 15-15A**

Commencing July 1, 2002, and continuing through June 30, 2006, the Employer agrees to pay the amounts indicated herein on the total payroll of the Employees covered under this Agreement employed within the jurisdictional territory of the Union into a United States Treasury-approved Joint Welfare Fund of the International Union of Operating Engineers, Locals No. 15, 15A, 15C, 15D (hereinafter "Welfare Fund") to be administered by Trustees, one-half of whom shall be designated by the Union and one-half by the Employers. Said Welfare Fund shall provide, without further contributions from either the Employer or the Employee, an approved plan of

coverage as required by the New York State Disability Benefits Law.

**Section 2 - Pension Fund Contribution - Local No. 15-15A**

Commencing July 1, 2002, and continuing through June 30, 2006, the Employer agrees to pay the amounts indicated herein on the straight time payroll of the Employees working under this Agreement employed within the jurisdictional territory of the Union into a United States Treasury-approved Joint Pension Fund of the International Union of Operating Engineers, Locals No. 15, 15A, 15C, 15D (hereinafter "Pension Fund") to be administered by Trustees, one-half of whom shall be designated by the Union and one-half by the Employers

**Section 3 - Local No. 15-15A**

**a) Computation of Welfare and Pension Fund Contributions**

Contributions for the Welfare Fund as provided herein shall be:

7/1/02 - 6/30/06
Four dollars and twenty cents ($4.20)

Contributions for the Pension Fund as provided herein shall be:

7/1/02 - 7/31/02
Three dollars and forty cents ($3.40)

8/1/02 – 6/30/06
Three dollars and sixty-five cents ($3.65)

Further distribution to be made mutually between

Union and Employer at a future date. Pension contributions are applied only to the straight time payroll of each Employee, and no contribution shall be made on the premium portion of double time or overtime of the payroll. Welfare contributions shall be made on the premium portion of the overtime rate.

**b) Coverage of Additional Employees Under the Welfare and Pension Funds**

Every present and future salaried regular employee of Locals No. 15, 15A, the Welfare Fund, the Pension Fund, the Vacation Fund, the Apprentice and Training Fund may participate in the benefits provided herein for Employees of the Employer for whose benefit the aforementioned contributions are made to the Welfare Fund and to the Pension Fund, provided that contributions at the rates herein before stated are made to the Welfare Fund and to the Pension Fund for or on behalf of said employees of Locals No. 15, 15A, the Welfare Fund, the Pension Fund, the Vacation Fund, the Apprentice and Training Fund by the respective employers of said employees on the basis of the actual hours paid to them or the maximum rate required to be paid pursuant to this Agreement, whichever is lower.

Coverage for the employees of the Welfare Fund and the Pension Fund may be indicated in the records of the respective Funds for which they are employed without actual payment of contributions on their behalf.

**Section 4 - Vacation Fund Contributions - Local No. 15-15A**

Commencing July 1, 2002 and continuing through June 30, 2006 the Employer agrees to pay the sum of:

One dollar ($1.00) per single time hour.

Two dollars ($2.00) per double time hour.

Further distribution to be made mutually between Union and Employer at a future date;

to each Employee covered by this Agreement working under the classification and jurisdictional territory of Locals No. 15, 15A, in stamps purchased from a United States Treasury-approved International Union of Operating Engineers, Locals No. 15, 15A, 15-D Vacation Fund (hereinafter "Locals No. 15, 15A, 15D Vacation Fund"). Said stamps are to be placed in the Employee's weekly pay envelope, and shall be cashed by Locals No. 15, 15A, 15D Vacation Fund at such times as shall be designated by the Trustees. Contributions of the Employer shall be used exclusively to provide benefits in such amount or amounts as the Trustees of Locals No. 15, 15A, 15D Vacation Fund may determine, as well as for the organization and administration of the Locals No. 15, 15A, 15D Vacation Fund. The Locals No. 15, 15A, 15D Vacation Fund shall be administered jointly by Trustees, one-half of whom shall be designated by the Union and one-half by the Employers, pursuant to an Agreement and Declaration of Trust.

**Section 5 - Apprentice and Training Fund Contribution - Local No. 15-15A**

Commencing July 1, 2002 and continuing through June 30, 2006, the Employer agrees to pay the sum of:

Fifty cents ($0.50) per hour for each single time hour paid;

One dollar ($1.00) per hour for each double time hour paid;

Further distribution to be made mutually between Union and Employer at a future date;

to each Employee covered by this Agreement working under the classification and jurisdictional territory of Locals No. 15, 15A, in stamps purchased from an United States Treasury-approved International Union of Operating Engineers, Locals No. 15, 15A, 15D Apprenticeship, Skill Improvement and Safety Fund (hereinafter "Apprentice Fund"). Said stamps are to be placed in the Employee's weekly pay envelope, and shall be remitted to the Apprentice Fund by the Employee at such times as shall be designated by the Trustees. Contributions of the Employer shall be used exclusively to provide benefits in such amount or amounts as the Trustees of the Apprentice Fund may determine, as well as for the organization and administration of the Apprentice Fund. The Apprentice Fund shall be administered jointly by Trustees, one-half of whom shall be designated by the Union and one-half by the G.C.A. pursuant to an Agreement and Declaration of Trust.

**Section 6 - Apprenticeship Standards Local No. 15-15A**

The Employer and the Union hereby acknowledge and agree that they are parties to and bound by the Standards of Apprenticeship of Training Joint Apprenticeship Program Local No. 15 I.U.O.E. which was ordered to be implemented by order dated July 12, 1985 of Hon. Vincent L. Broderick, United States District Judge. The Employer and the Union agree that said Standards are hereby incorporated in and made a part of this Agreement with the same effect as if set forth at length herein. Copies of said Standards are available from Local No. 15 or the G.C.A.

**Section 7 - Dues Checkoff - Local No. 15-15A**

Commencing July 1, 2002 and continuing through June 30, 2006, the Employer agrees that there has been deducted from the wages of each Employee covered by this Agreement working under any of the classifications as set forth in Article IX, Section 6(b) herein and jurisdictional territory of Locals No. 15, 15A and pay to said Locals No. 15, 15A after proper execution by each Employee of an authorization for the sum of:

Eighty cents ($0.80)
for each single time hour paid;
One dollar and sixty cents ($1.60)
for each double time hour paid;

which sums shall constitute a part of said

Employee's Locals No. 15, 15A union dues. Locals No. 15, 15A agree to indemnify and to hold harmless the Employer from any and all claims, actions and/or proceedings arising out of said dues checkoff.

**Section 8 - Annuity Fund Contribution - Local No. 15-15A**

Commencing July 1, 2002 and continuing through June 30, 2006, the Employer agrees to pay the sum of:

7/1/02 –7/31/02
Seven dollars and seventy-five cents ($7.75)
per single time hour;

Fifteen dollars and fifty cents ($15.50)
per double time hour;

8/1/02 – 6/30/06
Eight dollars ($8.00) per single time hour;

Sixteen dollars ($16.00) per
double-time time hour;

to each Employee covered by this Agreement working under the classification and jurisdictional territory of Locals No. 15, 15A in stamps purchased from a United States Treasury-approved Joint International Union of Operating Engineers, Locals No. 15, 15A Annuity Fund (hereinafter "Locals No. 15, 15A Annuity Fund"). Said stamps are to be placed in the Employee's weekly pay envelope, and shall be remitted to the Locals No. 15, 15A Annuity Fund by the Employee at such times as shall be designated by the Trustees.

Contributions of the Employer shall be used exclusively to provide benefits in such amount or amounts as the Trustees of the Locals No. 15, 15A Annuity Fund may determine, as well as for the organization and administration of the Locals No. 15, 15A Annuity Fund. The Locals No. 15, 15A Annuity Fund shall be administered jointly by Trustees, one-half of whom shall be designated by the Union and one-half by the Employers, pursuant to an Agreement and Declaration of Trust. For the purpose of this Section, Locals No. 15, 15A shall be considered a Contributing Employer and shall make contributions on behalf of its full-time employees, who are not members of another union for collective bargaining purposes.

**Section 9 - Consolidated Stamp - Local No. 15-15A**

Payment to the Locals No. 15, 15A, 15D Pension Fund, Welfare Fund, Vacation Fund, Apprentice Fund, Annuity Fund, and Dues Checkoff shall be by the purchase of a consolidated stamp. Payment to the Heavy Construction Industry Fund and Pension Contribution Liability Insurance shall be made by separate checks.

**Section 10 - Trust Agreement - Reporting Forms**

The Employer is bound by all the terms and conditions of the Agreement and Declaration of Trust and Plan with respect to each of the Fringe Benefit

Funds of both Local No. 14 and 14B and Local No. 15, 15A, 15C and 15D which Agreements and Declaration of Trust and Plan are hereby made part of this Agreement and shall be considered as incorporated herein.

The Employer agrees to provide the Pension Funds with Reporting Forms three (3) times per year, (April, August and December). Said reports will show name, social security number, hours and overtime hours worked.

The G.C.A. has agreed to reduce its two Trustees on the Local No. 14 Pension and Welfare Fund to only one Trustee as of July 1, 1983.

## ARTICLE XII
## Heavy Construction Industry Fund

In order to adequately protect the Heavy Construction Industry and in the interests of the Employees in the Industry, commencing July 1, 2002 through June 30, 2006 each Employer shall contribute thirty-five cents ($ 0.35) per hour to the Heavy Construction Industry Fund, applied only to the straight time payroll of each Employee. No contributions shall be made to this Fund on the premium portion of double time or overtime of the payroll of the Employees covered by this Agreement.

This Fund is designed for, but not limited to, the following purposes: 1) to increase employment

IN WITNESS WHEREOF, the parties hereto have undersigned this Agreement by their duly authorized representatives, the day and year first above-written.

THE INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCALS NO 14-14B, AFL-CIO

Joseph M. Rizzuto, Jr.
Business Manager, Financial Secretary

Francis X. Gray, Jr., President

Gerard A. Rich, Recording/Corresponding Secretary

THE INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCALS NO. 15-15A, AFL-CIO

Thomas P. Maguire, President and Business Manager

Thomas G. McNamara,
Recording Corresponding Secretary

FOR AND ON BEHALF OF, AND AUTHORIZED BY, THE MEMBERS OF THE GENERAL CONTRACTORS ASSOCIATION OF NEW YORK, INC. AND OTHER EMPLOYERS WHO HAVE APPOINTED THE GENERAL CONTRACTORS ASSOCIATION OF NEW YORK, INC. AS THEIR COLLECTIVE BARGAINING AGENT, WHOSE NAMES ARE ATTACHED HERETO IN EXHIBIT I.

Theodore E. King, Director of Labor Relations

**Local No. 14 - Apprentices**

**a) 1st Year Apprentice**

| Effective Date | 7/1/02 | 7/1/03 | 7/1/04 | 7/1/05 |
|---|---|---|---|---|
| Hourly Rate | $16.48 | | | |
| Total Fringe Benefits | $12.15 | | | |
| Total Wage & Fringe Benefits | $28.63 | | | |
| HCIF | $ 0.35 | $ 0.35 | $ 0.35 | $ 0.35 |

**a) 2nd Year Apprentice**

| Effective Date | 7/1/02 | 7/1/03 | 7/1/04 | 7/1/05 |
|---|---|---|---|---|
| Hourly Rate | $20.60 | | | |
| Total Fringe Benefits | $12.15 | | | |
| Total Wage & Fringe Benefits | $32.75 | | | |
| HCIF | $ 0.35 | $ 0.35 | $ 0.35 | $ 0.35 |

**a) 3rd Year Apprentice**

| Effective Date | 7/1/02 | 7/1/03 | 7/1/04 | 7/1/05 |
|---|---|---|---|---|
| Hourly Rate | $24.72 | | | |
| Total Fringe Benefits | $12.15 | | | |
| Total Wage & Fringe Benefits | $36.87 | | | |
| HCIF | $ 0.35 | $ 0.35 | $ 0.35 | $ 0.35 |

AGREEMENT

and

DECLARATION OF TRUST

of the

ANNUITY FUND OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL UNIONS 15, 15A, 15C, 15D, AFL-CIO

AGREEMENT AND DECLARATION OF TRUST

AGREEMENT AND DECLARATION OF TRUST, dated as of July 1, 1977 between the GENERAL CONTRACTORS ASSOCIATION OF NEW YORK, INC. and certain component members of the BUILDING TRADES EMPLOYERS ASSOCIATION, including THE CEMENT LEAGUE, ALLIED BUILDING METAL INDUSTRIES, CONSTRUCTION EQUIPMENT RENTAL ASSOCIATION, MASTER CARPENTERS ASSOCIATION and BUILDING CONTRACTORS ASSOCIATION, together with such other employers who may now or hereafter become parties to the within Plan (hereinafter referred to as "Contributing Employers"); and Local Unions 15, 15A, 15C, 15D, International Union of Operating Engineers, (hereinafter referred to as the "Union"); and THOMAS P. MAGUIRE and JAMES V. STAHL, both of 265 West 14th Street, New York, New York 10011 (who with their successors and substitutes, are hereinafter referred to as the "Union Trustees"); and ALFRED GEROSA of 370 Lexington Avenue, New York, New York 10528 and THEODORE KING of 60 East 42nd Street, New York, New York 10017, (who, with their successors and substitutes, are hereinafter referred to as the "Employer Trustees"); and all of the said Union Trustees and Employer Trustees (hereinafter collectively referred to as the "Trustees"):

W I T N E S S E T H :

WHEREAS, Local Union 15, 15A, 15C, 15D, AFL-CIO, International Union of Operating Engineers, AFL-CIO, hereinafter referred to as the "Union" is a Local Union affiliated with the International Union of Operating Engineers, AFL-CIO; and

WHEREAS, the Union has executed collective bargaining agreements with individual employers all of whom employ groups of employees covered within the scope of such collective agreements either association-wide or individually; and

WHEREAS, the said collective bargaining agreements, among other things, provide for the establishment of an Annuity Fund and for the payment by the Employers to the said Annuity Fund periodically of sums of money for those employees who are covered and entitled to the benefits of the said collective bargaining agreements, as more fully set forth in the said agreements, which are herewith incorporated by reference as though fully set forth; and

WHEREAS, the Union and the Employers desire to establish a Trust under which the moneys paid on account of Annuity benefits will be held in a trust fund to be known as the ANNUITY FUND OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL UNIONS 15, 15A, 15C, 15D, AFL-CIO (herein referred to as the "Annuity Fund"), and to disburse said moneys and other properties owned by the Annuity Fund, and to define the powers, duties and responsibilities of the Trustees; and

WHEREAS, it is desired by the Union and the Employers, that the Trustees shall formulate rules, regulations and by-laws comprising the qualifications, eligibility and benefit provisions of the Annuity Plan for the benefit of the employees embraced within the coverage of this agreement.

NOW, THEREFORE, in consideration of the mutual promises, covenants and conditions herein contained, a Trust is hereby created, and it is mutually declared and agreed as follows:

ARTICLE I

DEFINITIONS

Section 1. The term "Employer" as used herein shall mean each employer who has presently in force, or who hereafter executes a collective bargaining agreement with the Union either through any of the Associations with whom the Union is in collective bargaining agreement, or individually, and which provides for such employer contributions.

The term "Employer" as used herein shall also mean the Union with respect to its full-time salaried officers, business representatives, full-time paid clerical employees and organizers for whom the Union makes contributions to the Fund on the same basis as other contributing employers.

The term "Employer" shall also mean the Welfare Fund, Pension Fund, Apprenticeship Skill Improvement and Safety Fund and the Annuity Fund of the International Union of Operating Engineers, Local Unions 15, 15A, 15C, 15D, AFL-CIO, with respect to their full-time employees for whom the said Funds make contributions to this Fund on the same basis as other contributing employers.

Section 2. The term "Employee" as used herein shall mean all those employees who are embraced within the scope of the collective bargaining agreements hereinabove referred to now or hereafter in effect between the Employers and the Union.

The term "Employee" as used herein shall also mean any full-time salaried officer, business representative, full-time paid clerical employees and organizers for whom the Union makes contributions to the Fund on the same basis as other contributing employers.

The term "Employee" shall also mean any full-time paid clerical employee of the Welfare Fund, Pension Fund, Apprenticeship Skill Improvement and Safety Fund/and the Annuity Fund of the International Union of Operating Engineers, Local Unions 15, 15A, 15C, 15D, AFL-CIO, for whom the said Funds make contributions to this Fund on the same basis as other contributing employers.

Section 3. The term "Annuity Fund" or "Annuity Trust" as used herein shall mean all contributions to the Trust Fund created hereunder received by the Trustees under the said collective bargaining agreements and any additional contributions thereto that may hereafter be agreed upon by the parties under the said collective bargaining agreements or other written collective bargaining agreement between the parties, or any modification, amendment, revision or extension thereof, together with all income, increments, earnings and profits therefrom, and all other funds (as herein defined) received by the Trustees for the uses, purposes and trusts set forth in this Trust Agreement. The term "Annuity Fund" shall be interchangeable with the term "Annuity Trust" and with the term "Trust Fund."

Section 4. The term "Fund" or Funds" as used herein shall mean (1) cash, (2) credits, (3) stocks either common (with or without voting powers) or preferred (with or without present or future voting rights in the event of the happening of a preference condition), (4) bonds, (5) notes, (6) other property or securities or interests in property (real, personal or mixed) whether or not such funds meet the requirements of legal investments for trust funds in any state or jurisdiction, and (7) any life insurance or annuity contract or contracts issued by a life insurance company, held in or forming a part of the Annuity Fund, or any other investments which the Trustees may make not necessarily limited to the foregoing.

Section 5. The term "Trustees" as used herein shall mean the Trustees herein nominated and appointed and any successor Trustees designated in the manner provided herein.

Section 6. The term "Annuity Plan" as used herein means the plan, program, method and procedure for the making of regular contributions by Employers, and the payment by the Trustees of benefits from the Annuity Fund, in accordance with such rules and regulations relating to eligibility requirements, retirement, age, amount and computation of benefits and the general administration and operation of the Annuity Fund as the Trustees may from time to time adopt and promulgate.

Section 7. The term "Contributions" as used herein shall mean the payments required to be made to the Annuity Fund by the Employers.

ARTICLE II

NAME

There shall be established a Trust Fund to be known as the ANNUITY FUND OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL UNIONS 15, 15A, 15C, 15D, AFL-CIO.

ARTICLE III

PURPOSES

The purposes of the Trust Fund shall be to provide, pursuant to the Annuity Plan to be formulated and adopted by the Trustees various benefits now or hereafter provided for in the plan or any amendments thereof for the benefit of employees eligible thereto hereunder.

ARTICLE IV

APPROVAL OF GOVERNMENTAL AGENCIES

The Annuity Plan shall be submitted for approval under the applicable provisions of the Internal Revenue Code. In the event of failure of Annuity Plan and Agreement and Declaration of Trust to receive or retain approval as a qualified Annuity Plan and Agreement and Declaration of Trust under said provisions of the Internal Revenue Code, or any other applicable provisions of Federal Law as now in effect, or as subsequently amended or legislated, or if such approval, or any ruling in connection therewith shall result in the Employers' contribution constituting taxable income to employees, or the Employers not being entitled to claim a deduction of such contributions for income tax purposes, the

Trustees shall make such changes as are necessary to receive or retain such approval or authority for Employers to deduct payments to the Annuity Trust without reporting such payments as taxable income to Employees. It is intended, however, that in any event an Annuity Plan shall be established and should any dispute arise among the Trustees because of the said approval or any ruling in connection therewith, or failure to secure such approval, then a deadlock shall be deemed to exist and an umpire shall be designated as provided in Article X, Section 9, to decide such dispute, giving prime consideration to the intent set forth herein.

ARTICLE V

CONTRIBUTIONS TO THE ANNUITY FUND

Section 1. Commencing with July 1, 1977 the Employers shall contribute the sum provided for in the Collective Bargaining Agreements for all of the employees within the coverage of the said collective bargaining agreements, with the exception of employers employing members or persons covered under the collective bargaining agreement with Local 15C; contributions for employees covered under collective bargaining agreements with Local 15C shall commence on October 9, 1977 with payment by separate check.

Section 2. The Trustees may compel and enforce the payment of the contributions in any manner which they may deem proper; and the Trustees may make such additional rules and regulations to facilitate and enforce the collection and payment thereof as they may deem appropriate.

Section 3. Employer contributions shall become due on the payroll date and be reported and paid weekly. The failure of the Employer to pay the contributions required hereunder within ten (10) days after the date due shall be a violation of the collective bargaining agreement between the said Employer and the Union as well as a violation of the Employer's obligations hereunder. Non-payment by an Employer of any contributions when due shall not relieve any other Employer from his obligation to make payments.

Section 4. Each Employer shall promptly furnish to the Trustees on demand any and all wage records relating to his Employees which the Trustees shall require in writing. Each Employer shall also render to the Trustees with the payment of such contributions, or at such other regular intervals as the Trustees may request, written reports as to the wages paid to and hours worked by his Employees, other payroll data such as social security numbers, and the contributions due or payable to the Annuity Fund, as the Trustees may require.

Section 5. The Trustees, or their authorized representatives, may examine the pertinent books and records of each Employer whenever such examination may be deemed necessary or advisable by the Trustees in connection with the proper administration of the Annuity Fund.

ARTICLE VI

POWERS AND DUTIES OF THE TRUSTEES, EXPENSES AND FEES

Secion 1. The Trustees shall, among other things, without limiting the generality of the express or implied powers of the Trustees:

(a) Accept and receive all contributions and shall hold, invest, reinvest, manage and administer the same as part of the Annuity Fund for the uses, purposes and trusts herein provided.

(b) Accumulate all income, earnings and profits of the Annuity Fund and receive and administer the same as a part thereof.

(c) Formulate, adopt and administer an Annuity Plan for the exclusive benefit of the Employees in order to provide retirement and other benefits for Employees.

(d) Promulgate and establish rules and regulations for the administration and operation of the Annuity Plan in order to effectuate the purposes thereof; and in pursuance thereto (but without limitation on the powers of the Trustees by reason of such enumeration), formulate and establish the conditions of eligibility with respect to age and length of service, qualifications for retirement including early retirement, conditions for vesting prior to normal retirement date, past and future service benefit credits, the method of providing benefits, the payment of premiums in the event that insurance policies or annuity contracts are part of the

Annuity Plan, the purchase, handling, control and disposition of retirement income contracts, policies and annuities, the investment of funds and any and all other matters which the Trustees in their discretion, may deem necessary or proper to effectuate the purposes and intent of the Annuity Program.

(e) Amend the Annuity Plan from time to time, provided that such amendments comply with the purposes hereof. The Annuity Plan and all amendments thereto adopted by the Trustees shall be filed by the Trustees as part of the records and minutes of the Trustees, and a copy thereof shall be sent to the Union and the Employers.

(f) Establish and accumulate as part of the Annuity Fund such reserve or reserves as the Trustees shall in their opinion deem necessary or advisable for the sound and efficient administration of the Annuity Plan.

(g) Purchase, acquire, receive, retain, surrender, administer or assign any life insurance or annuity contract and pay the premiums, and exercise the rights, privileges, options and benefits contained in any such contract, in the event that the Trustees determine that insurance policies or annuity contracts shall be acquired as part of the Annuity Program.

(h) Receive any securities or other property included within the term "Funds" hereunder that are tendered to them and that they may deem to be acceptable.

(i) Pay out of the Trust Fund all real and personal property taxes of any nature whatsoever; provided, however, that the Trustees may contest the validity of any tax and may obtain the advice of counsel and for all and any acts done or omitted to be done pursuant to the advice of such counsel, the Trustees shall be held completely harmless.

(j) Enter into agreements, contracts and other instruments for the deposit of funds with banks, trust companies or other institutions, which accept and hold moneys on deposit, and to authorize such depositary to act as custodian of the funds, whether in cash or securities or other property, and to authorize such depositary or depositaries to convert, invest and reinvest the funds, entirely or in part, into securities of any kind and nature whatsoever.

(k) All checks, drafts, vouchers or other withdrawals of funds from the account of the trust fund shall be drawn and issued in accordance with the by-laws hereto annexed, but all withdrawals from the general fund shall require the signature of one (1) Union Trustee and one (1) Employer Trustee. The Trustees shall, in accordance with the by-laws, provide for a special and/or administrative account in the name of the fund for the payment of all routine and ordinary bills and expenses necessary to maintain current operations of the Trust Fund from which they shall be permitted to withdraw on the signature of any two Trustees, any funds necessary to operate the normal needs and requirements of the Annuity Fund. However, the Secretary-Treasurer shall, at least once a month, report to the Trustees all sums deposited in or withdrawn from such special account and the manner and reasons for the disbursements.

(l) In their discretion appoint a bank or a trust company whose principal office is located in the City and County of New York, to be designated as the "Corporate Trustee" or the "Custodial Trustee", and to enter into and execute a trust agreement with such bank or trust company to provide for the investment and reinvestment of the Trust Fund, with such other provisions incorporated therein as may be deemed desirable in the Trustees' sole discretion for the proper management of the Trust Fund and upon such execution to convey and transfer to the Corporate Trustee or Custodial Trustee any

part of the Annuity Fund and without limit with respect to the powers which the Trustees may grant to the Corporate Trustee or Custodial Trustee in such Agreement. The Trustees shall be forever released from any responsibility or liability with respect to any funds which they may convey to the "Corporate Trustee" or "Custodial Trustee".

(m) The Trustees are empowered to allocate fiduciary responsibilities and various administrative duties to committees and sub-committees of the Board of Trustees, and they may delegate such responsibilities and duties to other individuals as they may deem appropriate or necessary in their sole discretion, and consistent with the provisions of the Employees Retirement Income Security Act of 1974.

(n) The Trustees shall have exclusive authority and discretion to manage and control the assets of the Trust except to the extent that such authority to manage, acquire, or dispose of the assets of the plan is delegated to one or more investment managers in accordance with the following paragraph:

> The Trustees are hereby empowered to appoint an Investment Manager or Managers to manage, acquire, or dispose of any assets of the Fund. Such an Investment Manager may or may not be designated a "Corporate Trustee" or "Corporate Agent". An Investment Manager is any fiduciary who has been designated by the Trustees to manage, acquire or dispose of any assets of the Fund who is registered as an Investment Advisor under the Investment Advisors Act of 1940 or an insurance company qualified to perform services under the laws of more than one state, and who has acknowledged in writing that he is a fiduciary with respect to the Plan.

Section 2. The Trustees shall have and maintain an office in the City and County of New York, which shall be deemed the situs of the Annuity Fund. The Trustees may from time to time change the location of said office within the City and County of New York, but no change shall be effective until notice thereof shall have been given to the Union and the Employers.

Section 3. Notices given to the Trustees, the Union, or any Employer hereunder shall, unless otherwise specified be sufficient if in writing and delivered to, or sent by postpaid first class mail or prepaid telegram. Except as herein otherwise provided, distribution or delivery of any statement or document required hereunder to be made to the Trustees, Union or Employers shall be sufficient if delivered in person or if sent by postpaid first class mail.

Section 4. In addition to all other rights, powers and prerogatives vested in them, the Trustees may:

(a) Hold from time to time any or all of the Trust Fund in cash, uninvested and non-productive of interest or other income.

(b) Sell, transfer, or dispose of any securities or other property at any time held by them for cash or on credit; and convert, or exchange any securities or other property at any time held by them for other securities or property which the Trustees may deem acceptable. Any such sale, transfer, disposition, conversion or exchange may be made publicly or by private arrangement.

(c) Consent to the reorganization, consolidation, merger, dissolution, or readjustment of the finances of any corporation, company or association, any of the securities of which may at any time be held hereunder, exercise any option or options, make any agreement or subscription, pay any expenses, assessments or subscriptions in connection therewith and hold and retain any property acquired by means of the exercise of the powers expressed in this paragraph to the extent that it is acceptable to the Trustees.

(d) Compromise, arbitrate, settle, adjust or release any suit or legal proceeding, claim, debt, damage or undertaking due or owing from or to the Trust Fund on such terms and conditions as the Trustees may deem advisable.

(e) Register any securities or other property held in the Annuity Fund with or without the addition of words indicating that such securities or other property are held in a fiduciary capacity; and hold in bearer form any securities or other property held hereunder so that title thereto will pass by delivery, but the books and records of the Trustees shall show that all such investments are part of the Annuity Fund.

(f) Lease or purchase such premises, materials, supplies and equipment, and employ and retain such legal counsel, investment counsel, administrative, accounting, actuarial, clerical, custodian and other assistants or employees as in their discretion the Trustees may deem necessary or appropriate and to pay their reasonable expenses and compensation out of the Trust Fund.

(g) Vote in person or by proxy or otherwise upon securities held by the Trustees and to exercise by attorney or in any other manner any other rights of whatsoever nature pertaining to securities or any other property at any time held by them hereunder.

(h) Make, execute and deliver as Trustees any and all instruments in writing necessary or proper for the effective exercise of any of the Trustees' powers as stated herein, or otherwise necessary to accomplish the purposes of the Annuity Fund and this Trust Agreement.

(i) Borrow money from any and all types of persons, companies or institutions upon such terms and conditions as the Trustees may deem desirable and for the sums so borrowed or advanced, the Trustees may issue promissory notes or other evidence of indebtedness as Trustees, and secure the repayment thereof by the pledge of any securities or other property in their possession as Trustees.

(j) Apply to the United States District Court for the Southern District with respect to the disposition of any disputes which may arise among the Trustees and be unresolved among them or with respect to the disposition of the Annuity Fund if there shall be a dispute and no resolution concerning the same; or submit by mutual agreement to impartial arbitration for an award and determination any of the foregoing disputes if they be unresolved; but nothing herein contained shall be construed as imposing any duty on the Trustees to make such application, or as a limitation of any kind or nature upon the powers, rights and prerogatives of the Trustees.

(k) Authorize by resolution any one or more of the Trustees to execute any notice or other instrument in writing and all persons, partnerships, corporations or associations may rely thereupon that such notice or instrument has been duly authorized and is binding on the Annuity Trust and the Trustees.

(l) Provide, under this Agreement and Declaration of Trust and under any plan thereafter promulgated, for employees or officials connected with and/or members of the Union for whom the Union will make contributions, subject at all times to the irreviewable discretion of the Trustees as to coverage, amount of contributions and any and all other things or matters pertaining thereto.

(m) Do all other acts, and take any and all other action, whether or not expressly authorized herein, which the Trustees may deem necessary or proper for the protection of the property held hereunder.

Section 5. The expenses incurred in the collection of contributions and in the administration and operation of the Annuity Fund shall be paid from the Annuity Fund. No Trustee shall receive any compensation for the services rendered by him.

ARTICLE VII

ACCOUNTS, RECORDS AND AUDITING THEREOF

Section 1. All income, profits, recoveries, contributions, forfeitures and any and all moneys, securities and properties of any kind at any time received or held by the Trustees hereunder shall be held for the uses and purposes hereof.

Section 2. The Trustees shall keep true and accurate books of accounts and records of all their transactions, which shall be open to the inspection of each of the Trustees at all times, and which shall be audited semi-annually by a certified public accountant selectedby the Trustees. A condensed statement of such audits shall be available at all times for inspection by the Union, the Employers and Employees at the principal office of the Annuity Fund

Section 3. The Annuity Fund shall be valued by the Trustees annually at the market value as of the close of business at the end of the last business day preceding the anniversary date of the Annuity Plan, but the value of any life insurance or annuity contracts shall not be included in such valuation; and in making such valuation, the Trustees may engage the help, and pay the expenses of, such persons as they may select.

ARTICLE VIII

CLAIMS AND INDIVIDUAL RIGHTS

Section 1. No employee or any person claiming by or through such employee by reason of having been named a beneficiary in a certificate or otherwise, shall have any rights, title or interest in or to the funds or other property of the Annuity Fund or any part thereof, except as specifically provided by the Annuity Plan and the applicable rules and regulations thereunder.

Section 2. No moneys, property or equity of any nature whatsoever in the Trust or Trust Fund or policies or benefits or moneys payable therefrom shall be subject in any manner, by any Employee or person claiming through such Employee, to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, garnishment, mortgage, lien or charge, and any attempt to cause the same to be subject thereto shall be null and void.

ARTICLE IX

INDEMNIFICATION AND PROTECTION OF TRUSTEES AND OTHER PERSONS

Section 1. No successor Trustee shall in any way be liable or responsible for anything done or committed in the administration of the Trust prior to the date they became a Trustee. The Trustees shall not be liable for the acts or omissions of any investment manager, attorney, agent or assistant employed by them in pursuance of this agreement, if such investment manager, attorney, agent or assistant was selected pursuant to this Trust Agreement and such persons performance was periodically reviewed by the Trustees who found such performance to be satisfactory; provided that nothing herein shall relieve any Corporate Trustee of any liability with regard to the performance of its employees.

Section 2. The Trustees, to the extent permitted by applicable law, shall incur no liability in acting upon any instrument, application, notice, request, signed letter, telegram or other paper or document believed by them to be genuine and to contain a true statement of facts, and to be signed by the proper person.

Section 3. TRUSTEES' INSURANCE. The Trustees may authorize the purchase of insurance for themselves collectively and/or individually and for any other fiduciary employed by the Trustees to cover liability or losses occuring by reason of the act or omission of a fiduciary.

Section 4. The Trustees shall be fully protected in acting upon any instrument, certificate, or paper believed by them to be genuine and to be signed or presented by the proper person or persons, and shall be under no duty to make any investigation or inquiry as to any statement contained in any such writing, but may accept the same as conclusive evidence of the truth and accuracy of the statements therein contained.

Section 5. The Trustees shall not be liable for the proper application of any part of the Annuity Fund or for any other liabilities arising in connection with the administration or operation of the Trust Fund, except as herein provided.

Section 6. The Trustees may from time to time consult with the Trust's legal counsel and shall be fully protected in acting and relying upon advice of such counsel.

Section 7. The Trustees may seek judicial protection by any action or proceeding they may deem necessary to settle their accounts, or to obtain a judicial determination or declaratory judgment as to any question of construction of the Trust Agreement or instruction as to any question of construction of the Trust Agreement or instruction as to any action thereunder.

Section 8. The costs and expenses of any action, suit, or proceeding brought by or against the Trustees or any of them (including counsel fees) shall be paid from the Trust Fund, except in relation to matters as to which it shall be adjudged in such action, suit or proceeding that such Trustee was acting in bad faith or was grossly negligent in the performance of his duties hereunder.

Section 9. The Trustees shall not be bound by any notice, direction, requisition, advice or request, unless and until it shall have been received by the Trustees at the principal place of business of the Annuity Fund.

Section 10. No person, partnership, corporation or association dealing with the Trustees shall be obliged to see to the application of any Funds, securities or other property paid or delivered to the Trustees as a purchase price or otherwise or to see that the terms of the Trust have been complied with or be obliged to inquire into the authority of the Trustees or the necessity or expediency of any act of the Trustees and every instrument effected by the Trustees shall be conclusive in favor of any person, partnership, corporation or association relying thereon that (1) at the time of the delivery of said instrument, the Trust was in full force and effect; (2) said instrument was effected in accordance with the terms and conditions of this Trust Agreement; and (3) the Trustees were duly authorized and empowered to execute such instrument.

ARTICLE X

APPOINTMENT, REMOVAL RESIGNATION AND ADMINISTRATIVE FUNCTIONS OF TRUSTEES

Section 1. The Trustees shall consist of four persons, two persons named by the Union and two persons named by the Employers. The Union Trustees shall be Thomas P. Maguire and James V. Stahl. The Employer Trustees named by the individual Employers are Alfred Gerosa and Theodore King.

The above named Trustees, each for himself, accept their appointment as Trustees and consent to act as Trustee hereunder, and declare and agree that they will receive the terms, conditions and provisions of this Trust Agreement and for the uses, purposes and trusts and with the powers and duties herein set forth and none other.

Section 2. The Trust to be set up by the parties herein shall be known as Annuity Fund of the International Union of Operating Engineers, Local Unions 15, 15A, 15C, 15D, AFL-CIO, and the Trustees may conduct the business of the Trust and execute all instruments in that name. The Chairman of the Board of Trustees shall be selected from the Employer-Trustees of the Board and the Secretary-Treasurer shall be selected from the Union Trustees of the Board.

Section 3. Each Trustee shall serve until his death, resignation or removal of substitution.

Section 4. A Trustee may resign on giving thirty (30) days' notice in writing to the remaining Trustees.

Section 5. Any Union Trustee may be removed from office at any time by the Union, such removal to be evidenced by an instrument in writing signed by the accredited officers of the Union and delivered to all the Trustees. Any Employer Trustee may be removed from office at any time by the Association or Associations that designated him, such removal to be evidenced by an instrument in writing signed by the accredited officers of such Association or Associations and delivered to all of the Trustees.

Section 6. In case any Trustee who is an Employee representative shall die, resign or be removed, a successor Trustee shall be appointed forthwith by the Union, such appointment to be evidenced by an instrument in writing signed by the accredited officers of the Union. In case any Trustee who is an Employer representative shall die, resign or be removed, a successor Trustee shall be appointed forthwith by the Employers, such appointment to be evidenced by an instrument in writing, signed by the accredited officers of such Employers.

Section 7. A meeting may be called at any time by the Chairman or by any two of the Trustees upon giving five (5) days written notice to all the other Trustees.

Section 8. Any action by the Trustees may be taken either at a meeting or in writing signed by all of the Trustees without a meeting. Concurrence of the respective majorities of each unit of the Union and Employer Trustees shall be required for any action taken at the meeting. All decisions and/or resolutions of the Trustees shall as aforementioned be by respective majority votes of both Union and Employer Trustee units, and which voting shall be on a unit basis of the respective Union-Employer Trustees groups. All action taken by the Trustees shall be by a quorum of no less than three (3) Trustees.

Concurrence in writing signed by the requisite number of Trustees as aforementioned shall be required for any decisions or other action taken or adopted without a formal meeting.

Section 9. In the event of a deadlock among the Trustees or any of the affairs of this Trust, an impartial umpire to decide the matter in dispute shall be appointed by consent of all of the Trustees, and if the Trustees have not selected an impartial umpire who has signified his acceptance, within ten (10) days after the deadlock arose, any one or more of the Trustees may petition the United States District Court for the Southern District of New York for the appointment of an impartial umpire to decide such dispute, or for the Court to do so.

ARTICLE XI

TERMINATION OF THE TRUST

In the event that the obligation of the Employers to make Employer contributions shall terminate, or upon any liquidation of the Trust Estate, the Trustees shall continue to apply the Trust Estate to the purposes specified in Article III hereof and none other, and upon the disbursement of the entire Trust Estate this Trust shall terminate.

ARTICLE XII

BONDING

The Trustees and the employees of the Annuity Fund shall each be bonded by a duly authorized surety company in such amounts as may be determined from time to time by the Trustees.

ARTICLE XIII

EXECUTION AND INTERPRETATION

Section 1. This Agreement and Declaration of Trust may be executed in one or more counterparts. The signature of a party on any counterparts shall be sufficient evidence of his execution hereof.

Section 2. The provisions of this Trust Agreement shall be liberally construed in order to promote and effectuate the establishment and operation of the Annuity Program herein contemplated. The Trustees shall have power to interpret, apply and construe the provisions of this Trust Agreement, and any construction, interpretation and application adopted by the Trustees in good faith shall be binding upon the Union, the Employers and the Employees.

ARTICLE XIV

AMENDMENTS

The provisions of this Agreement and Declaration of Trust may be amended by an instrument in writing executed by the Trustees provided there are attached thereto a duly certified copy of a resolution approving such amendment adopted by the general organization of the Union at a regular meeting or at a special meeting called for that purpose, and duly certified copies of resolutions duly approving such amendment, it being expressly understood and agreed that no amendment shall divert any of the Trust Estate then in the hands of the Trustees from the purposes of this Trust.

ARTICLE XV

SAVING CLAUSE

If, for any reason, any provision of this Agreement shall be, is or is hereafter determined by decision, act or regulation of a duly constituted body or authority, to be in any respect invalid, it shall not nullify any of the other terms and provisions of this Agreement, and in such respect or respects as may be necessary to conform this Agreement with the applicable provisions of law in order to prevent the invalidity of such provision or provisions, then the said provision or provisions shall be deemed automatically amended to conform with such rule, law, regulation, act or decision and the parties to this Agreement, shall, in such case, meet and take the necessary and appropriate action, at a duly constituted meeting, to formally adopt and ratify such amendment or amendments to this Agreement and they shall be deemed included herein as though originally contained in and a part of this Agreement from its inception.

IN WITNESS WHEREOF, the Trustees, the Associations and Local Unions 15, 15A, 15C, 15D of the International Union of Operating Engineers, by their proper officers who represented that they were duly authorized to act have executed this instrument to evidence their acceptance of the Trusts hereby created and their agreements to be bound hereby, the day and year first above written.

UNION TRUSTEES

Thomas F. Maguire
THOMAS F. MAGUIRE

James V. Stahl
JAMES V. STAHL

EMPLOYER TRUSTEES

[signature]
ALFRED DEROSA

[signature]
THEODORE KING

GENERAL CONTRACTORS ASSOCIATION OF NEW YORK, INC.

BY [signature]

BUILDING TRADES EMPLOYERS ASSOCIATION

BY [signature]

THE CEMENT LEAGUE

BY [signature]

ALLIED BUILDING METAL INDUSTRIES

BY [signature]

CONSTRUCTION EQUIPMENT RENTAL ASSOCIATION

BY Robert J. Carter
PRES. CERA

MASTER CARPENTERS ASSOCIATION

BY ______________________

BUILDING CONTRACTORS ASSOCIATION

BY [signature]

**I.U.O.E. LOCAL 15, 15A, 15C & 15D ANNUITY, WELFARE and APPRENTICESHIP SKILL IMPROVEMENT & SAFETY FUNDS**

**COLLECTION & AUDIT PROCEDURES**

---

SECTION I

GENERAL POLICY

This policy is adopted by the Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds of the International Union of Operating Engineers Local 15, 15A, 15C & 15D, AFL-CIO (collectively the "Local 15 Funds") in order to coordinate the collection of required contributions. However, each Fund reserves the right to proceed independently in the collection of required contributions. It is the policy of the Local 15 Funds to collect all employer contributions as they are due and to make such diligent and systematic efforts as are appropriate under the circumstances to do so. References to a "Fund" shall refer to each individual Local 15 Fund separately.

If an employer ceases to have an obligation to contribute to a Fund under a Fund's Trust Agreement, a collective bargaining agreement ("CBA"), or applicable law, the employer shall remain subject to this Policy with regard to the time period during which the employer was obligated to contribute to the Fund or the Local 15 Funds, collectively.

It is the policy of the Local 15 Funds to collect all employer contributions as they are due, and to make such efforts as are appropriated under the circumstances to do so.

The Trustees of the Local 15 Funds have the legal right to exercise all remedies allowable under the Trust Agreement and the Employee Retirement Income Security Act of 1974, as amended (ERISA), including but not limited to:

1. the right to establish that contributions shall become due on the payroll date.

2. the right to establish a random audit program;

3. the right to audit the financial records of contributing employers, including but not limited to payroll ledgers, federal and state tax returns, IRS Form 941 and such other books and records of the employers necessary in order for the auditor to ascertain if proper contributions have been made, and to give an unqualified opinion;

4. the right to require that the delinquent employer pay the cost of the audit, interest, attorneys' fees and other expenses incurred by the Local 15 Funds

in determining the amount of the delinquency and in the collection of such delinquency;

5.  the right to collect liquidated damages;

6.  the right to require a bond or a cash deposit as security for prompt future payments due from an employer that has been habitually delinquent in its contributions to a Fund or the Local 15 Funds, collectively; and

7.  the right to take all other steps and to perform all other acts that are necessary in order to collect contributions due the Local 15 Funds in a timely and expeditious manner.

The procedures set forth herein shall be followed unless the Board of Trustees determines that they should be waived in a particular instance.

All questions or disputes relating to the interpretation, meaning and/or application of this Policy shall be finally and exclusively resolved by the Board of Trustees in the exercise of their discretion and in the performance of their fiduciary obligations to the Local 15 Funds' participants and beneficiaries, for the protection of the financial integrity and soundness of the Local 15 Funds, and the efficient and effective administration of the Local 15 Funds.

## SECTION II

## ADMINISTRATIVE PROCEDURE

In accordance with the provisions of the applicable Trust Agreements and the above general policy declaration, the following administrative steps shall be taken to effectuate the collection of delinquent contributions.

1.  The Fund Office will maintain a list of all employers that are bound to a collective bargaining agreement with the Union.

2.  Employers shall make fringe benefit contributions by the purchase of a consolidate stamp from the Fund Office. Said stamps shall be placed in the employees' weekly pay envelopes, and shall be remitted to the Fund Office three (3) times per year: March and April, July and August, November and December. Further, pursuant to the terms of the applicable CBA, each Employer is required to submit a report of hours worked by its employees, along with the names and social security numbers of said employees. In the event a member/employee informs the Fund Office, Trustee or Union Representative that he has not received his stamps in his weekly pay envelope, or the information contained on the Employers hours worked report discloses a deficiency, then the Local 15 Funds shall consider the Employer to be delinquent and the Fund Administrator shall cause a delinquency notice to be sent via first class mail to the delinquent Employer. The notice shall advise the Employer that the

contributions must be received within ten (10) days of the date of the notice so as to avoid interest, legal fees and penalties.

3. Interest shall accrue on delinquent contributions from the due date at the prime rate, plus one percent.

4. If an employer has not made the remittance within ten (10) days from the date of the Notice, the Fund Administrator shall refer the matter to the Funds' legal counsel for collection.

5. Legal Counsel shall follow procedures set forth in Section III of this Policy Statement.

6. If an employer pays the principle amount of the delinquency but does not pay accrued interest and/or any other amounts owed, acceptance of the principal amount shall not constitute a waiver of the Local 15 Fund's claim for accrued and unpaid interest and/or any other amounts.

## SECTION III

## LEGAL ACTION AND SETTLEMENT

1. When a collection matter has been referred to the Local 15 Funds' legal counsel the Fund Administrator shall forward to counsel the following documents so that he shall be able to send a lawyer's demand for payment letter:

a. a signed copy of the CBA;
b. name and address of the employer;
c. the amount due in contributions and the cost of audit; and
d. a copy of any audits performed.

2. In the event that an employer fails to pay the delinquent contributions and interest within ten (10) days after legal counsel's demand for payment, legal counsel shall initiate suit to recover the delinquency unless counsel recommends a different course of action based upon pertinent factors which shall include, but are not limited to, the following:

a. the amount of the delinquency;

b. the length of time the delinquent amount has been owed;

c. the financial condition of the employer;

d. the employer's past performance as a contributing employer; and/or

e. any other factor that, in the discretion of legal counsel, may have a material bearing on the collection of the delinquent contributions.

3. Settlements calling for payments over time must be in writing and signed on behalf of the Local 15 Funds and the employer. Such settlement must include the requirement to employer make contributions on a timely basis and shall include appropriate interest paid at 1%

4. The Board of Trustees maintains the discretion not to commence a lawsuit if doing so would not be in the best interests of the Local 15 Funds.

5. The Board of Trustees reserves the right to accept or reject an employer's proposal regarding any delinquent contributions, interest, liquidated damages, and attorneys' fees over a period of time and to compromise any claim or delinquent account as recommended by legal counsel.

6. Notwithstanding the procedures set forth in this Policy, the Board of Trustees may refer any delinquent account to legal counsel at an earlier or later date than provided for herein when circumstances warrant that collection action be initiated forthwith.

7. Legal counsel and the Fund Administrator shall keep the Board of Trustees apprised of the status of these matters.

## SECTION IV

## PAYROLL AUDIT POLICY

1. The Board of Trustees shall have discretion in determining which employers will be audited in each year. Each employer shall generally be audited at least once during a three (3) year period. All employers shall be audited at least once during a five (5) year period, such period to commence from the date of the last audit of the employer, or in cases where from the date of the last audit of the employer, or in cases where an employer has not previously been audited, from the date the employer first became a participating employer in the Local 15 Funds. Each new employer shall be audited within the first year of its participation.

2. The Trustees may conduct an audit of any participating employer in accordance with the procedure set forth in the applicable CBA, whenever the Trustees resolve that the circumstances warrant such audit.

3. Notwithstanding the guidelines of this Section, the Trustees may, in the exercise of their discretion, determine that the audit schedule set forth above should not be followed in a particular instance.

4.      Prior to conducting each audit, a Fund auditor shall notify the Fund Administrator and review the employer's CBA and any pending issues. The Fund auditor will forward a letter to the employer advising it of the impending audit, citing the Trustees' authority to conduct the audit and describing the records required.

5.      In the event that to conduct an audit, the Trustees' authorized representative must travel more than 100 miles from the Fund Office location in New York City, the employer shall be required to reimburse the Local 15 Annuity, Welfare and Apprenticeship Skill Improvement & Safety Funds for the cost of the audit, including travel and lodging, regardless of whether or not a fringe benefit deficiency is scheduled in the final report issued by the authorized representative for the Trustees. The above shall only be applied after the employer has been provided, in written notices ten (10) days apart, that it may satisfy its requirement of producing the necessary records by forwarding them via express mail delivery to the Trustees' authorized representative.

6.      Upon issuance of the Fund auditor's final report, the Funds' legal counsel shall send a letter to the employer demanding payment of any amounts found to be due by the auditor. In the event that the employer refuses to pay said amount found due and owing, the matter shall be referred to legal counsel.

7.      In the event an employer refuses to permit an audit upon request by the Trustees, or if the employer refuses the Fund auditor access to pertinent records, then the Local 15 Funds' auditor shall refer the matter to legal counsel. Legal counsel shall thereafter demand in writing that the employer make available such books and records as are necessary for the Fund auditor to conduct an audit. If the records are still not made available, legal counsel shall institute legal action to enforce the Trustees' right to conduct a payroll audit and the employer shall pay to the Funds all costs and attorneys' fees incurred as a result of the employer's refusal to permit an audit or refusal to make available all pertinent records.

Approved:    June 28, 2001
Amended:    April 19, 2007

EXHIBIT "E"

**HOURS EXPENDED BY COUNSEL**

| Date | Attorney | Description | Hours |
|---|---|---|---|
| 4/24/08 | JMS | Drafted, revised and finalized Summons and Complaint for delinquent contributions; Prepared civil cover sheet and Rule 7.1 Statement to be filed with court | 2.5 hours |
| 6/6/08 | JMS | Prepared Summons and Proof of Service for ECF filing | 0.25 hours |
| 7/3/08 | JMS | Prepared Default Judgment Motion for filing and service on Defendant | 3.0 hours |
| Total: | | | 5.75 hours |